SCHOONER MAHUKONA CO. v. CHARLES NELSON CO.

(District Court, N. D. California. January 10, 1906.)

No. 12,936.

1. SHIPPING—CHARTER—ABANDONMENT.

The fact that a schooner, chartered to carry a cargo of lumber after her arrival from a voyage, was 60 days later than expected in arriving, does not abrogate the charter, in the absence of an agreement to that effect, and, where on her arrival she was loaded by the charterer and carried and delivered the cargo as contemplated by the charter, she is entitled to recover freight at the charter rate.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 165–168.]

2. SAME—DELAY IN ARRIVING AT LOADING PORT—LIABILITY FOR DAMAGES.

Where a charter of a vessel to be entered upon after her arrival from a voyage did not fix the time within which she was to arrive and receive her cargo, she was bound only to make reasonable efforts to complete the voyage as speedily as practicable, and is not liable for loss to the charterer resulting from the fact that she was delayed in reaching port by storms or adverse winds without fault on her part.

In Admiralty. Suit to recover freight under a charter.

Milton Andros, for libelant.

Nathan H. Frank, for respondent.

DE HAVEN, District Judge. This action was brought to recover $3,781.54, alleged to be due from the defendant, the Charles Nelson Company, for the carriage of lumber shipped by that company at Everett, Puget Sound, on the schooner Mahukona, and by that vessel transported and delivered at Oakland, Cal., to the order of the defendant. The libel alleges that on or about February 2, 1902, libelant entered into a verbal contract of affreightment with the defendant, by the terms of which it was agreed that the schooner Mahukona, of which libelant was the owner, then bound from Zamboango in the Phillipine Islands to Puget Sound, should on its arrival at some port on Puget Sound, thereafter to be designated by the defendant, take on board a full cargo of lumber, to be furnished by the defendant, and transport the same to Oakland and/or San Francisco, and there deliver the same to the defendant, at the freight rate of $4.25 per thousand feet board measure; that thereafter the defendant confirmed the said contract by the following writing, which was accepted by the libelant:

"The Charles Nelson Company, Wholesale Lumber, Shipping and Commission,
6 California Street.

"San Francisco, February 20th, 1902.

"Messrs. Hind, Rolph & Co., San Francisco, Cal.—Gentlemen: We beg to confirm charter of Schr. Mahukona from Everett, Wash., to Oakland Long Wharf (one place) and/or San Francisco (one place), freight to be at $4.25 per M. ft. board measure.

"Yours very truly,                    James Tyson, Manager.
"Accepted: Hind, Rolph & Co."

The libel further alleges that on May 6, 1902, the Mahukona arrived at Everett, and was there loaded with a cargo furnished by

the defendant, consisting of 889,773 feet, board measure, of lumber with which she proceeded to Oakland, and there delivered to the order of the defendant, and, by reason of the carriage thereof, earned freight in the sum of $3,781.54. In its answer the defendant admits that it delivered to the Mahukona 889,773 feet, board measure, of lumber at Everett, and that the same was delivered by that schooner to the defendant at Oakland, but denies that such cargo was loaded under the contract of affreightment set forth in the libel, but on the contrary alleges that said contract was rescinded by mutual consent of the parties, and further denies that the freight earned by the carriage of said cargo, amounts to the sum of $3,781.54, or to any sum of money in excess of $3,114.20. The answer further alleges:

"That the said respondent had provided a cargo for the said schooner Mahukona, which cargo said respondent was able, ready and willing to deliver on the first day of March, 1902. That by reason of the long delay of said vessel in arriving at the port of delivery, and by reason of said vessel being overdue for a period in the neighborhood of three (3) months, this respondent was compelled to, and did, ship said cargo on board of another vessel, to wit, the barkentine Quickstep, and that thereafter, and by reason of the delay in the arrival of said schooner Mahukona at the port of delivery, this respondent was compelled to, and did, furnish another and fresh cargo for said schooner Mahukona, for which said respondent was compelled to, and did, pay an additional sum of $1 per M. to the damage and loss of said respondent in the sum of eight hundred and eighty-nine and 77/100 (889.77) dollars."

1. The evidence does not, in my opinion, show that the contract of charter referred to in the libel was rescinded by mutual consent of the parties thereto; nor do I think such contract was dissolved, as contended by defendant, by reason of the fact that the Mahukona was 60 days overdue when she reached Everett, the port where she was to receive her cargo. This long delay did not put an end to the contract, as it did not defeat the object for which the vessel had been chartered. This very clearly appears, not only from the fact that she was finally loaded with a cargo such as was contemplated she should carry when the charter was made, but from the defendant's letters written to the Weyerhauser Timber Company, dated April 8, 1902, and May 1, 1902. The first was written when the vessel was about 30 days over-due, and, while it expressed some doubt as to her safety, the timber company was directed to load her if she arrived later. The letter of May 1st was written after the Mahukona had been spoken, and is as follows:

"Re Schr. Mahukona. This vessel was spoken several days ago and ought to be on the Sound in the next ten to fifteen days. We would thank you to be good enough to increase our order, Southern Pacific Co., sufficient to load her for here. * * * Trusting you will do your best for the Mahukona, we are,

"Yours very truly,                          James Tyson, Manager."

The defendant was a wholesale, shipping, and commission merchant, purchasing lumber from time to time at Puget Sound and other ports, and shipping the same to San Francisco, for sale; and it is evident that, when the letters just referred to were written, the defendant considered the Mahukona's charter as still in force, and contem-

plated loading her thereunder, with a cargo of lumber, upon her arrival at Everett. Without further discussion of the evidence, it is sufficient to say the vessel reached Everett before the date stated as that of her probable arrival in defendant's letter of May 1st, and my conclusion is that she was then loaded by the defendant under the contract alleged in the libel.

2. This leaves for consideration only the question whether the defendant is entitled to a set-off in the nature of damages because the vessel did not arrive, as soon as she was expected, when the contract of charter was made. It is conceded that the late arrival of the Mahukona at the port where she was to take on cargo was caused by storms and adverse winds, and was not due to any fault upon the part of the vessel or its navigation. This being so, it would seem to be well settled that the vessel is not responsible for the damage which the defendant may have sustained by reason of her tardy arrival. The charter party did not fix any time within which she was to arrive and receive her cargo. The obligation of the ship therefore was to make reasonable efforts to enter as speedily as practicable upon the performance of the voyage named in the charter; and, having made such efforts, the shipowner is not responsible for any loss sustained by the charterer, by reason of the fact that without fault on the part of her owner or crew the vessel was delayed by storms and adverse winds in reaching the port where she was to receive her cargo. The reason for this rule is that in such a case the owner is not guilty of any breach of his implied obligation to use reasonable diligence in bringing his vessel to the port of shipment.

A decree will, in accordance with the foregoing views, be entered in favor of the libelant for the sum of $3,781.54, with interest thereon at the rate of 6 per cent. per annum, from August 23, 1902, until satisfaction of this decree, and for costs.